**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

LORI W. WILL
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

March 27, 2026

Richard P. Rollo, Esquire
Travis S. Hunter, Esquire
Danielle I. Bell, Esquire
Richards Layton & Finger, P.A.
920 North King Street
Wilmington, Delaware 19801

> RE:  *Bobby Sarnevesht v. Triller Group Inc., f/k/a AGBA Group Holding Limited*, C.A. No. 2025-0979-LWW

Dear Counsel,

I write regarding the plaintiff's request for damages following this court's entry of a default judgment.  The plaintiff seeks an entry of judgment on the papers, totaling hundreds of millions of dollars.  As explained below, I cannot award these damages on the limited paper record supplied.  An evidentiary hearing is needed.

This lawsuit stems from Triller Group Inc.'s failure to promptly file a registration with the Securities and Exchange Commission covering 54,077,698 shares of common stock issued to former convertible noteholders at the time of a 2024 merger.[1]  Plaintiff Bobby Sarnevesht, acting as the stockholder representative,

---

[1] Verified Compl. (Dkt. 1) ¶¶ 9-10, 13, 14, 19; *id.* at Ex. A § 4.12.

sued for breach of contract and obtained a default judgment.[2]  As a result of that default judgment, all factual allegations in the complaint were deemed admitted.[3]

The plaintiff now seeks damages based on the "New York Rule," which applies when "stock or propert[y] of like character were converted, not delivered according to contractual or other legal obligation, or otherwise improperly manipulated."[4]  He calculates damages ranging from approximately $248 million to $256 million by multiplying the entire block of shares by the peak post-merger stock price of $4.75 per share.[5]  In doing so, he assumes the unregistered shares currently hold a value of either $0 or $0.15.[6]

This damages request is denied, at present, for several reasons.

First, the applicability of the New York Rule to these facts is questionable. The plaintiff's cited cases involve fundamentally different harms:

---

[2] *Id.* ¶¶ 25-28; *see* Dkts. 6, 12, 14.

[3] *See Carlton Invs. v. TLC Beatrice Int'l Hldgs., Inc.*, 1996 WL 426501, at *1 (Del. Ch. July 24, 1996) ("The effect of a default is simply to admit all of the well-pleaded allegations of the complaint.").

[4] Pl.'s Feb. 10, 2026 Letter Regarding Calculation of Damages (Dkt. 13) 2 (citing *Diamond Fortress Techs., Inc. v. EverID, Inc.*, 274 A.3d 287, 306 (Del. Super. 2022)).

[5] *Id.* at 4-5.

[6] *Id.* at 4.

- *Duncan v. Theratx, Inc.* involved a temporary suspension of an active registration statement, freezing shares that were already registered and actively trading.[7]

- *Diamond Fortress Technologies, Inc. v. EverID, Inc.* concerned a total failure to deliver cryptocurrency assets to the plaintiff.[8]

- *Comrie v. Enterasys Networks, Inc.* addressed an abandoned initial public offering and the breach of an alternative contract to issue equivalent replacement options or pay a cash amount if the offering did not occur.[9]

- *Paradee v. Paradee* centered on a breach of fiduciary duty regarding a life insurance policy.[10]

None of these cases deal with the appropriate remedy for a failure to initially register securities where the shares were delivered to the plaintiff.

Second, even if the New York Rule applies, I have concerns about the plaintiff's approach to damages. For instance, it is not clear that the "highest intermediate price . . . during a reasonable time at the beginning of the restricted period" is equivalent to the highest stock price post-closing.[11] *Duncan* defines the "reasonable time" for finding the highest intermediate price as the period when

---

[7] 775 A.2d 1019, 1023 n.9, 1029 (Del. 2001) (explaining that "the issuer's breach at least in some sense is a temporary 'conversion' of the shares[]").

[8] 274 A.3d at 308-09.

[9] 837 A.2d 1, 20-21 (Del. Ch. 2003).

[10] 2010 WL 3959604, at *13 (Del. Ch. Oct. 5, 2010).

[11] *Duncan*, 775 A.2d at 1020, 1029.

shares could be sold "without depressing the market."[12] Liquidating over 54 million shares at the peak without causing the price to crash seems improbable.[13] Contract damages protect expectation interests.[14] They do not credit a plaintiff with perfect "market prescience."[15]

Further, contract damages must not provide a windfall.[16] Although the plaintiff assumes that the restricted shares are effectively worthless, unregistered

---

[12] *Id.* at 1023 n.9.

[13] *See Brown v. Matterport, Inc.*, 2024 WL 2745822, at *17 (Del. Ch. May 28, 2024) (explaining that a "higher participation rate [i.e., the volume of shares a trader would rationally sell in the market as a percentage of total trading volume] poses an increased risk of negatively affecting the stock price, particularly when a large trade relative to a stock's average volume is executed[,]" because "market participants react to a trader's injection of additional shares into the market"), *aff'd, rev'd in part on other grounds*, 340 A.3d 1149 (Del. 2025) (TABLE).

[14] *E.I. DuPont de Nemours & Co. v. Pressman*, 679 A.2d 436, 445 (Del. 1996) ("Historically, damages for breach of contract have been limited to the non-breaching parties' expectation interest." (citing Restatement (Second) of Contracts § 347 (A.L.I. 1981))); *Vivint Solar, Inc. v. Lundberg*, 2024 WL 2755380, at *31 (Del. Ch. May 30, 2024) (explaining that damages are ordinarily "based on the injured party's expectation interest").

[15] *Duncan*, 775 A.2d at 1023-24 & n.12 ("[T]he issuer should not bear the risk of all subsequent share price increases because it is impossible to know whether and when the stockholders actually would have sold their shares during the restricted period." (citing *Madison Fund, Inc. v. Charter Co.*, 427 F. Supp. 597, 608 (S.D.N.Y. 1977) ("This [c]ourt simply cannot credit plaintiff with market prescience."))).

[16] *See Paul v. Deloitte & Touche, LLP*, 974 A.2d 140, 146 (Del. 2009) ("Contract damages are designed to place the injured party . . . in the same place as he would have been if the contract had been performed. Such damages should not act as a windfall." (citation omitted)); *see also Diamond Fortress*, 274 A.3d at 307 (explaining that the New York Rule "is careful to avoid windfall awards to injured parties").

shares may hold value and be sold in private transactions.  Granting the peak price assumes an unproven total loss.

Given the magnitude of the requested award and issues outlined above, an evidentiary hearing on damages is required.[17]  The plaintiff must brief why the New York Rule, rather than standard expectation damages, applies to a failure to file a registration statement.  He must also offer evidence to support his request, including:

- expert analysis on how long it would realistically take to sell 54,077,698 shares on the open market without depressing the price, using the volume weighted average price or daily trading volume;[18] and

- evidence of the actual fair market value of the restricted shares currently held, which must be deducted from the calculated loss.

IT IS SO ORDERED.

Sincerely yours,

*/s/ Lori W. Will*

Lori W. Will
Vice Chancellor

cc:    Triller Group, Inc.

---

[17] I am in receipt of the plaintiff's letter regarding competing creditors purportedly attempting to attach the defendant's remaining assets.  *See* Pl.'s Mar. 25, 2026 Letter Regarding Update (Dkt. 15).  I understand the urgency of the plaintiff's collection efforts.  But a defendant's financial distress does not relieve a plaintiff of the burden to prove damages with reasonable certainty.  An unsupported judgment is not the appropriate procedural vehicle for emergency asset preservation.

[18] *See Matterport*, 2024 WL 2745822, at *15-20.